**UNITED STATES OF AMERICA,**
   **Plaintiff,**

 v.                **Case No. 04-CR-254**

**DANIEL FERNANDEZ,**
   **Defendant.**

## DECISION AND ORDER

Defendant Daniel Fernandez filed a motion to suppress evidence seized from his parents' home pursuant to a search warrant, arguing that the warrant application contained a materially false statement, see Franks v. Delaware, 438 U.S. 154 (1978), and a motion to suppress based on the officers' warrantless entry into the home while they were waiting for the warrant to be issued. The case was assigned to a magistrate judge, who held a hearing on the warrantless entry issue but declined to hear testimony on the Franks issue. She then issued a recommendation that the motions be denied.

Defendant objected and then filed a supplemental motion on the Franks issue. The government has responded,[1] and the motions are now ready for decision. My review of the recommendation is de novo. Fed. R. Crim. P. 59(b). For the reasons that follow, I will adopt the recommendation and deny the motions.

---

[1] The government's response was untimely, and defendant asks me to disregard it. I do not rely on any statements contained in the government's response in this decision.

## I. FACTS

On October 8, 2004, law enforcement officers attempted to arrange a controlled buy of cocaine from defendant using a confidential informant ("CI"). Officers observed defendant leaving his parents' residence at 823 Northdale Drive, Caledonia, WI and eventually arrested him after a brief chase. Shortly after the arrest, officers Wheeler and Boggs were dispatched to 823 Northdale Drive in order to secure the residence while a search warrant was obtained. Officers believed that defendant used the residence as a drug house.

The officers arrived at about 5:00 p.m. and encountered defendant's mother, Linda Servantez, coming out of the house. They stopped her and advised her who they were and why they were there. Wheeler testified that Servantez allowed them to enter, and they proceeded inside and sat at the kitchen table with Servantez and defendant's father, Arthur Fernandez. Wheeler denied that they entered any other rooms or conducted a search at that time. He stated that Servantez was allowed to call her attorney and her movement was not restricted. The officers testified that Servantez initially verbally consented to a search but later changed her mind and refused to sign a consent to search form. Wheeler testified that officer Krogh arrived and he left at about 6:00 p.m.

Krogh testified that he stayed with Servantez and Fernandez in the kitchen and living room area, and that after about ½ hour Servantez was asked to remain in the kitchen. He stated that at about 6:00 p.m. additional agents, including detective Glidewell, arrived and took over the investigation. Krogh testified that he remained with Servantez and Fernandez, making small talk and watching television. He stated that Servantez spoke to her brother, a lawyer, who said that officers were not supposed to be inside the house. Krogh indicated to Servantez that they could all wait inside or outside, and it was decided that they would

2

Case 2:04-cr-00254-LA   Filed 01/30/06   Page 2 of 11   Document 56

wait inside. Eventually, Servantez was forbidden to use the phone and Glidewell unplugged it because it kept ringing. Glidewell told Servantez that if she consented they would only search defendant's bedroom, but if they had to get a warrant the search would be "more thorough." (Tr. at 81.)

Servantez testified that she was stopped by officers as she attempted to leave to pick up some food. She stated that she returned to the house and the officers followed her. She told them they could not come in, but they said, yes, they could, to make sure evidence was not destroyed. She called her brother, a lawyer, who stated that the officers should not be in the house. Servantez and her brother both told the officers to leave but they refused. Servantez's brother and another lawyer he knew went to the house but were refused admittance by the officers. Servantez testified that she and Fernandez were told to sit at the kitchen table. One of the officers asked her to sign a consent form, but she refused. She testified that the officers told her that the search would be less thorough if she consented and that she would regret not consenting. She stated that while she was detained several officers came in and out of her house, without obtaining permission, and that one of the officers went into her bedroom and another into the front guest room without permission. She testified that during the later execution of the warrant officers made a mess of her house. She stated that defendant did not regularly live with her or pay rent, but he occasionally slept in the front guest room, had clothing there, and received mail there.

Fernandez also testified that the officers entered without permission, refused to leave, and, after consent was refused, stated that they were going to be there for awhile and it was going to get messy. He stated that several officers entered, all without permission, but he did not see any of them enter rooms other than the living room and kitchen.

3

Officers obtained a search warrant from a state court judge at about 7:40 p.m., then conducted a search of the home that lasted until about 9:30 p.m. While defendant contends that officers entered the home and wandered about without consent, he does not allege that anything was seized prior to the warrant being obtained. Nor does he allege that the warrant application contained any observations made by officers inside the house on October 8.

The warrant affidavit, executed by Special Agent Taylor, stated that defendant was under investigation for drug dealing and the home at 823 Northdale Drive was believed to be used as a drug house.[2] Taylor based his "belief upon personal knowledge, and information from fellow law enforcement officers, as well as a controlled buy utilizing a confidential informant." (R. 22 at 2.)[3]

Taylor stated that law enforcement had been working with a CI, who was believed to be reliable because his information had been corroborated by law enforcement; he had aided in other investigations; and he had previously made two controlled buys of controlled substances, which led to one search warrant, one arrest, and subsequently one felony conviction. Taylor averred that within the past seven days the CI had purchased nine ounces of cocaine from defendant approximately every two days. The CI related that on October 4, defendant came to his residence at 1628 Manitoba, South Milwaukee, and sold him 4½ ounces of cocaine on credit. On October 5, the CI turned over to law enforcement

---

[2]The balance of the facts set forth in this portion of the decision are derived from the warrant application. Generally, in determining the propriety of a warrant the court is limited to reviewing the information in the warrant application. United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967).

[3]Defendant contends that the final phrase of this sentence was false; no "controlled buy" was conducted at the residence.

146.33 grams of cocaine he received from defendant the day before, which was tested and yielded a result positive for cocaine. Later on October 5, law enforcement monitored a phone call between the CI and defendant arranging for the delivery of $4000 as payment for the cocaine distributed the previous day. Defendant agreed to accept payment at his residence at 823 Northdale Drive, and asked that it be delivered on October 6. On October 6, officers provided the CI with $4000 in pre-recorded currency and observed him arrive at and enter the residence at 823 Northdale Drive. After leaving, the CI told law enforcement that defendant held a large black handgun during the delivery. The CI also stated that he had arranged to buy nine ounces of cocaine from defendant on October 8. Taylor later checked defendant's record and learned that he was a convicted felon and thus barred from possessing firearms.

Taylor averred that on October 8 law enforcement established surveillance of the residence at 823 Northdale and at about 2:11 p.m. saw defendant leaving in a black Cadillac DeVille. At about 2:30 p.m., law enforcement monitored a call between defendant and the CI, during which defendant indicated that he needed until about 4:30 p.m. At about 4:27 p.m., defendant called the CI and stated that he was switching vehicles in a white Dodge Caravan. At about 4:49 p.m., law enforcement saw the white Caravan park in front of a business located at the intersection of Highway 32 and Ryan Road. As marked squads approached, the Caravan drove off, increasing speed. Officers pursued. The Caravan came to a stop at a dead end and the driver, later identified as defendant, fled on foot, climbed an embankment and jumped off a cliff into Lake Michigan. Law enforcement saw defendant swimming in the lake, and he was retrieved by a K-9 unit and taken into custody. A subsequent search of the Caravan turned up cocaine residue. Taylor stated that officers

5

"continue to maintain their presence at the residence located at 823 Northdale Drive, Caledonia, Wisconsin, and have frozen the scene there in anticipation of receiving a warrant to search the residence." (R. 22 at 8 ¶ 8(c).) The affidavit contains no information obtained by officers inside the residence.

## II. DISCUSSION

### A. Franks Motion

Defendant argues that Taylor lied when he referred to a "controlled buy utilizing a confidential informant." (R. 22 at 2.) He contends that although officers attempted to set up a controlled buy it never occurred and that without this information the affidavit failed to establish probable cause. Defendant further contends that Taylor failed to advise the judge that the CI was a twice-convicted felon with another pending felony charge, information which cast serious doubt on his credibility. As noted, the magistrate judge declined to hold an evidentiary hearing on this issue.

In his supplemental motion (filed after the magistrate issued her recommendation), defendant argues that Taylor omitted additional information which cast doubt on the credibility of the CI. Specifically, he states that it appears the CI began working for law enforcement shortly after December 10, 2003, when officers executed a search warrant at his house. No charges were filed at that time, despite the alleged discovery of fourteen grams of cocaine, four grams of marijuana and $9000 cash. Defendant states that according to police reports the CI was stopped on September 27, 2004, with one ounce of cocaine in his car. On September 28, 2004, Taylor swore out a complaint against the CI based on the December 10, 2003 incident, and an arrest warrant was issued on October 4,

6

2004. Defendant contends that the CI continued to work for law enforcement (against him) even though there was an active warrant for his arrest; he further contends that the CI continued to engage in drug trafficking even after agreeing to cooperate with law enforcement. He argues that had this information been presented to the judge, the CI would have been found unreliable and the warrant would not have issued.

The court must hold a Franks hearing if (1) the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56. Under the first prong, the standard is not whether any statement in the affidavit is false, but rather whether the affiant knew or should have known that it was false. See, e.g., United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000); United States v. Roth, 201 F.3d 888, 892 (7th Cir. 2000). The defendant may also challenge omissions from the warrant affidavit, but he "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." United States v. McNeese, 901 F.2d 585, 594 (7th Cir. 1991).

Under the second prong, even deliberately false representations will not invalidate a search if the remaining, truthful statements establish probable cause. United States v. Ferra, 948 F.2d 352, 353 (7th Cir. 1991). Likewise, an unimportant statement, even if deliberately misleading, does not trigger the need for a hearing. United States v. Maro, 272 F.3d 817, 821 (7th Cir. 2001). "Nor is an omission material if, in context, the information was

7

of such minimal significance that its omission could not reasonably have affected the magistrate's judgment in finding probable cause to search." McNeese, 901 F.2d at 594.

In the present case, I agree with the magistrate judge that defendant made an insufficient showing in his original Franks motion that Taylor willfully or recklessly included false information in the affidavit, and that the balance of the affidavit is clearly sufficient to establish probable cause. First, while it is true that there is no indication of a controlled buy at 823 Northdale Drive, there was a controlled delivery of $4000 to defendant at that address. Thus, it appears that, at most, this was an imprecise use of language by Taylor. Such technical and insignificant contradictions do not evince a deliberate disregard of the truth. See United States v. Souffront, 338 F.3d 809, 822 (7th Cir. 2003) (citing Maro, 272 F.3d at 822). Second, as the magistrate judge explained, even excising this statement, the affidavit contained sufficient information to establish probable cause. I adopt the magistrate judge's discussion of this issue. (R. 35 at 10-12.) I further adopt the magistrate judge's discussion of the CI's reliability. (R. 35 at 12-13.)

Defendant's supplemental motion, while suggesting that the CI continued to engage in illegal conduct after he initially agreed to cooperate, does not change my conclusion. Cooperating informants often have a history of criminal conduct; that is often how they come to the attention of law enforcement. See United States v. One Parcel of Real Estate Located at 1948 S. Martin Luther King Drive, Springfield, Illinois, et al., 270 F.3d 1102, 1113 (7th Cir. 2001) (noting that informants often have questionable backgrounds); see also Illinois v. Gates, 462 U.S. 213, 234 (1983) ("Even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise

8

be the case."). More important, though, is the fact that law enforcement corroborated the CI's information in the present case. The CI stated that defendant sold him 4½ ounces of cocaine on credit on October 4, and on October 5 the CI turned over 146.33 grams of cocaine, which officers tested. Later on October 5, officers monitored a phone call during which the CI arranged to deliver payment to defendant at 823 Northdale Drive, and on October 6 officers conducted a controlled delivery of $4000 cash using the CI. The CI then arranged a buy from defendant, and on October 8 officers observed defendant leave 823 Northdale, then monitored phone calls between defendant and the CI regarding the purchase. Later on October 8, officers observed defendant driving the vehicle he described during the monitored call and arrested him after a chase. In sum, Taylor, while vouching for the CI's reliability based on his past cooperation, did not rely solely on the CI's say-so. Instead, he engaged in additional investigation to confirm that defendant was dealing cocaine. Therefore, I find that defendant has made an insufficient showing to obtain a Franks hearing, and the motion is denied.

**B. Motion to Suppress Based on Warrantless Entry**

Defendant also argues that the officers unlawfully entered and occupied the residence at 823 Northdale while waiting for the warrant to issue. I need not determine the propriety of the officers actions prior to the execution of the warrant (or the issue of defendant's standing to challenge the entry) because, under the "independent source" doctrine, all of the evidence was lawfully seized pursuant to the search warrant.[4]

---

[4]Much space in defendants' briefs is devoted to the officers' treatment of his parents. However, defendant lacks standing to challenge any violation of his parents' rights. See United States v. Fuesting, 845 F.2d 664, 671 (7th Cir. 1988) (holding that defendant could not base motion to suppress on allegedly illegal arrest, detention and

9

The independent source doctrine permits the introduction of evidence initially discovered unlawfully if the evidence was seized later during a search that was not tainted by the initial illegality. United States v. Williams, 400 F.3d 1023, 1025 (7th Cir.) (citing United States v. May, 214 F.3d 900, 906 (7th Cir. 2000)), cert. denied, 126 S. Ct. 621 (2005). In order to determine whether the independent source doctrine applies, the court asks two questions: (1) whether the officer's decision to seek a search warrant was prompted by the evidence seen or seized during the warrantless search; and (2) whether such evidence affected the judge's decision to issue the search warrant. Id. (citing United States v. Markling, 7 F.3d 1309, 1315-16 (7th Cir. 1993)).

First, it is undisputed that Taylor had decided to obtain a search warrant before officers entered the residence at 823 Northdale. Officers were sent there only after the decision was made in order to secure it while the warrant was obtained.[5] Second, the affidavit presented to the state court judge contained no mention of any observations made by officers inside 823 Northdale. Rather, it was based on the officers' investigation and use of the CI up to the time of defendant's arrest. See Fuesting, 845 F.2d at 672 (rejecting motion to suppress based on alleged illegal entry into home prior to issuance of warrant and alleged illegal questioning of defendant's wife where warrant was based on other

questioning of his wife).

[5]See also Segura v. United States, 468 U.S. 796, 810 (1984) (holding that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents").

Case 2:04-cr-00254-LA   Filed 01/30/06   Page 10 of 11   Document 56

information).  Therefore, the independent source doctrine applies, and the motion must be denied.[6]  See Williams, 400 F.3d at 1025-26.[7]

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 35) is adopted, and defendant's motions (R. 14, 16, 44) are **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **TELEPHONIC STATUS** on **Thursday, February 2, 2006, at 3:30 p.m.**  The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[6]There is no need to conduct a de novo hearing on this issue, as defendant requests, because I need resolve no issues of credibility in order to decide the motion.

[7]Defendant relies on Kirk v. Louisiana, 536 U.S. 635 (2002), but that case is inapposite.  In Kirk, officers entered the defendant's home and searched him without a warrant.  The Supreme Court reversed the state court's decision that the search was reasonable, even in the absence of exigent circumstances, because it was supported by probable cause.  Id. at 638.  "Although the officers sought and obtained a search warrant while they detained [the defendant] in his home, they only obtained this warrant after they had entered his home, arrested him, frisked him, found a drug vial in his underwear, and observed contraband in plain view in the apartment."  Id. at 636. In the present case, no evidence was seized prior to the execution of the search warrant, and the decision to obtain the warrant was made prior to the entry, based on other evidence.  Illinois v. McArthur, 531 U.S. 326 (2001) is also of no help to defendant because in that case the Court approved a temporary restraint while the officers obtained a warrant.  Further, the Court did not address the independent source doctrine in McArthur.

11