# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                      **Case No. 04-CR-254**

**DANIEL FERNANDEZ**
        **Defendant.**

---

## SENTENCING MEMORANDUM

In the early 1990s, defendant Daniel Fernandez was convicted of two small drug sales, for which he received relatively short prison terms. Based on those prior offenses, when the government indicted him on a charge of possession with intent to distribute cocaine in 2004, defendant faced a guideline prison term of 188-235 months as a career offender, twice the sentence the guidelines would otherwise have recommended. Because this case presented an example of how the career offender guideline can conflict with the purposes of sentencing under 18 U.S.C. § 3553(a), I instead imposed a non-guideline sentence that better served those purposes. In this memorandum, I set forth the reasons for the sentence imposed.

## I.  SENTENCING PROCEDURE

In light of United States v. Booker, 543 U.S. 220 (2005), I typically follow a three-step sentencing process. First, I determine the applicable advisory guideline range, resolving any factual disputes necessary to that determination. Second, I determine whether, pursuant to the Sentencing Commission's policy statements, any departures from

the advisory guideline range clearly apply. Finally, I determine the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a).

## II. DISCUSSION

### A. Guideline Calculations

Defendant pleaded guilty to possession with intent to distribute cocaine. 21 U.S.C. §§ 841(a)(1), (b)(1)(C). The pre-sentence report ("PSR") calculated his base offense level ("OL") as 26 under U.S.S.G. § 2D1.1(c)(7), then assigned 2 level enhancements for possession of a firearm, § 2D1.1(b)(1), and reckless endangerment during flight, § 3C1.2. The PSR denied a reduction for acceptance of responsibility under § 3E1.1 because defendant contested these enhancements and disputed certain aspects of relevant conduct. The PSR then assigned a criminal history category ("CHC") of III based on his two prior criminal convictions, producing an imprisonment range of 121-151 months. However, because defendant's two priors were "controlled substance offenses" under § 4B1.2(b), defendant qualified as a career offender under § 4B1.1, which raised his base OL to 34 and his CHC to VI, for a range of 262-327 months. Defendant conceded that he was a career offender but argued that the enhancements under § 3C1.2 and 2D1.1(b)(1) should not apply, and that he was entitled to a reduction for acceptance of responsibility.

#### 1. Section 3C1.2 Enhancement

Under U.S.S.G. § 3C1.2, the defendant receives a 2 level enhancement if he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." In the present case, law enforcement attempted to arrest defendant as he proceeded to a rendevous point with a

2

confidential informant ("CI"). As marked squads approached, defendant sped away, leading officers on a 1.8 mile chase before he reached a dead end, abandoned his vehicle, climbed an embankment and jumped into Lake Michigan, where he was retrieved by a K-9 unit. He was later convicted of fleeing under Wis. Stat. § 346.04(3) in state court and sentenced to one year in jail. Based on this conduct, I determined that the enhancement applied.

First, in United States v. Howze, 343 F.3d 919, 921-22 (7th Cir. 2003), the Seventh Circuit held that fleeing under Wisconsin law always a creates serious potential risk of physical injury to another.[1] The court there construed the "violent felony" provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), not § 3C1.2, but the operative language in the two provisions is nearly identical.[2]

Second, I found that the particular circumstances of defendant's flight created a substantial risk to others. Defendant noted that he did not greatly exceed the posted speed limit in the area in which he fled, and that his actions did not endanger any specific person. However, the chase lasted about two miles and, although it did not reach very high speeds, defendant admitted that he accelerated when officers approached and exceeded the posted limit. Moreover, because the guideline deals with risk of injury, it is

---

[1]Wis. Stat. § 346.04(3) provides: "No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operators vehicle or extinguish the lights of the vehicle in an attempt to elude or flee."

[2]Under the ACCA, a crime is a "violent felony" if it "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

3

not necessary that any person actually be endangered.  Finally, defendant's jump into the lake created further risk for the officers attempting to extricate and apprehend him.  See United States v. Reyes-Oseguera, 106 F.3d 1481, 1483 (9th Cir. 1997) (noting that § 3C1.2 may also apply to flight on foot and risk to officers attempting to apprehend the defendant).  For all of these reasons, I found that the enhancement applied.[3]

### 2.    Section 2D1.1(b)(1) Enhancement

Section § 2D1.1(b)(1) provides for a 2 level enhancement if the defendant possessed a dangerous weapon, including a firearm, during the commission of a drug offense. Application note 3 explains that the enhancement applies if the weapon was present, unless it is clearly improbable that it was connected with the offense.  U.S.S.G. § 2D1.1 cmt. n.3.  The Seventh Circuit has held that under this provision the government must first prove by a preponderance of the evidence that the defendant possessed the gun.  If the government is able to do so, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense.  United States v. Bothun, 424 F.3d 582, 586 (7th Cir. 2005).

In the present case, the government relied on the statement of the CI, who said that on one occasion when he delivered money to defendant to pay a drug debt defendant possessed a handgun, and the discovery of a handgun along with drugs during a search of defendant's parents house, in the bedroom defendant used.  I found this evidence

---

[3]Because defendant qualified as a career offender, this enhancement did not affect the final guideline determination.  However, it did affect whether under § 4A1.2 I considered the state fleeing case "part of the instant offense," and whether under § 5G1.3(b) I ran the sentence on the instant drug offense concurrently with the state fleeing sentence.

4

sufficient to meet the government's initial burden. Officers found the gun in close proximity to defendant's cocaine, which the Seventh Circuit has held is sufficient. See, e.g., id.; United States v. Corral, 324 F.3d 866, 873 (7th Cir. 2003).

Defendant argued that the CI was unreliable and denied possessing the gun during their encounter. He also presented evidence that the gun was in the house because his brother, also allegedly involved in drug dealing, was holding it for a friend.

While I might have had some reason to doubt the CI, I found that the discovery of the gun along with cocaine was sufficient. Possibly, as defendant argued, someone else actually owned the gun and his brother may have brought the gun into the home, but even so it was not clearly improbable that the gun was connected to defendant's offense. More than one person can constructively possess a firearm, and officers found the gun in the bedroom defendant used when he stayed at his parents' house, near his cocaine. Further, the Seventh Circuit has found handguns to be drug dealers' tools of the trade. See, e.g., United States v. Castillo, 406 F.3d 806, 815 (7th Cir. 2005); cf. U.S.S.G. § 2D1.1 cmt. n.3 (stating that the enhancement would not apply to an unloaded hunting rifle found in the closet). Therefore, the enhancement applied.[4]

**3. Section 3E1.1 Reduction**

Finally, defendant argued that he was entitled to a 3 level reduction for acceptance of responsibility under § 3E1.1. The government did not disagree.

---

[4]This enhancement also did not affect the final guideline determination due to the applicability of the career offender provision. However, it likely did affect defendant's eligibility for certain prison programs.

5

Under application note 3, entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct, ordinarily suffices to obtain the reduction. U.S.S.G. § 3E1.1 cmt. n.3. In the present case, defendant pleaded guilty, but the PSR denied the reduction because he contested the two enhancements discussed above, as well as some of the particulars of his dealings with the CI. Nevertheless, I found that he was entitled to the reduction. Although he denied a certain deal with the CI, he admitted a buyer-seller relationship with the CI and did not contest the relevant conduct drug weight amount. Nor did he deny fleeing; rather, under § 3C1.2 he contested the legal significance of his flight. Finally, the firearm enhancement did not affect the final guideline determination, nor could I find that defendant's objection to that enhancement was false or frivolous. Therefore, I granted the 3 level reduction, making the final offense level 31, the criminal history category VI, and the imprisonment range 188-235 months.

**B.    Departure**

Defendant requested a departure under U.S.S.G. § 4A1.3, arguing that the guidelines overstated his criminal record. However, with defendant's consent, I elected to consider his argument under § 3553(a).

**C.    Section 3553(a)**

Section 3553(a) directs the sentencing court to consider seven factors:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

6

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

After considering these factors, the statute directs the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. § 3553(a).

### 1. Nature of Offense

Defendant sold cocaine to a CI in the fall of 2004. Although the parties quarreled over details, they agreed that defendant's relevant conduct was ½ to 2 kg of cocaine, a not insignificant amount. I found by a preponderance of the evidence that defendant possessed a firearm, although he did not use it in any way. Defendant's flight created a risk to others and thus aggravated the offense.

### 2. Character of Defendant

Defendant was 34 years old and had a prior record, including two drug distribution cases. However, those cases were fairly minor, the first a 1991 sale of 2.9 grams of

7

cocaine for $220, and the second a 1993 sale of 1 gram $100. Defendant had no other criminal convictions, aside from the fleeing conviction that arose out of the present offense.[5] Further, aside from a non-criminal ordinance violation in 1997, defendant had no law enforcement contacts from 1994 to 2004.

Defendant appeared to have a difficult childhood, growing up with an abusive step-father who used alcohol and drugs. He attempted suicide at age 13 and began using alcohol and marijuana in his early teens, before turning to cocaine at 18 or 19. He had several juvenile cases of disorderly conduct and battery. He was 19 and 22 at the time of his prior drug convictions. Despite this, defendant graduated from high school and completed some college courses, though until recently he had little verifiable employment.

Defendant married in 1997, and the marriage produced three children, ages ten, seven and four. He separated from his wife and during the separation had a child with another woman. He also had a ten-year old from a previous relationship. Defendant recently re-united with his wife, though, and she portrayed him as a great father. She described how he cared for their youngest child after he was scalded in the bathtub by a negligent baby-sitter. Defendant also helped care for his brother after he was shot and left paralyzed. I received numerous letters from friends and family attesting to defendant's caring nature and strong family support. Defendant had for the past year worked for his uncle, a lawyer, and performed well on pre-trial release for the nearly two years the case was pending.

---

[5]Because the fleeing offense was "part of the instant offense" under U.S.S.G. § 4A1.2, it did not score criminal history points under the guidelines.

8

### 3.      Purposes of Sentencing

I saw no evidence that defendant was dangerous, but he did present some risk of recidivism given his record.  There was also a need for substantial confinement to reflect the seriousness of the offense and deter others.  Defendant seemed to have some substance abuse issues, but under the circumstances I had to deal with them initially through recommendations to the BOP and later conditions of supervised release.  He owed some "buy money" to the government, the payment of which I made a condition of supervised release.  See United States v. Daddato, 996 F.2d 903 (7th Cir. 1993).

### 4.      Guidelines

The guidelines called for a term of 188-235 months.  For two reasons, I concluded that a sentence within the range was greater than necessary to satisfy the purposes of sentencing.

### a.      Career Offender

The guideline range was high because defendant qualified as a career offender under U.S.S.G. § 4B1.1.  Absent that designation, his range would have been 87-108 months.[6]  Courts have, in pre- and post-Booker cases, recognized that the career offender guideline can produce a penalty greater than necessary to satisfy the purposes of sentencing.  See, e.g., United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001) ("In some circumstances, a large disparity [between the length of the prior sentences and the sentence produced by the guideline] might indicate that the career offender sentence provides a deterrent effect so in excess of what is required . . . as to constitute a mitigating

---

[6]The OL otherwise would have been 27 (base 26 + 2 + 2 – 3) and the CHC III.

9

circumstance present 'to a degree' not adequately considered by the Commission.");

United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995) (stating that the district court can depart where the range created by the career offender provision overstates the seriousness of the defendant's record; United States v. Qualls, 373 F. Supp. 2d 873, 876-77 (E.D. Wis. 2005) (stating that in some cases the career offender guideline creates sentences far greater than necessary, such as where the qualifying offenses are designated crimes of violence but do not suggest a risk justifying such a sentence, or where the prior sentences were short, making the guideline range applicable to the instant offense a colossal increase); United States v. Serrano, No. 04-CR-414, 2005 U.S. Dist LEXIS 9782, at *22-25 (S.D.N.Y. May 19, 2005) (imposing non-guideline sentence where defendant's career offender predicates were minor drug offenses on which he served little time); United States v. Corber, No. 04-4003, 2005 U.S. Dist. LEXIS 8927, at *7-9 (D. Kan. Apr. 13, 2005), aff'd, 159 Fed. Appx. 54 (10th Cir. 2005) (finding that the career offender guideline created sentence greater than necessary, considering the nature of the predicate offenses and the instant offense); United States v. Phelps, 366 F. Supp. 2d 580, 590 (E.D. Tenn. 2005) (stating that "it is not unusual that the technical definitions of 'crime of violence' and 'controlled substance offense' operate to subject some defendants to not just substantial, but extraordinary increases in their advisory Guidelines ranges," which in some cases will be greater than necessary, especially where "the defendant's prior convictions are very old and he has demonstrated some ability to live for substantial periods crime free or in cases where the defendant barely qualifies as a career offender"); United States v. Carvajal, No. 04-CR-222, 2005 U.S. Dist. LEXIS 3076, at *15-16 (S.D.N.Y. Feb. 22, 2005)

10

(finding that the career offender guideline produced a sentence greater than necessary under § 3553(a)).

The Sentencing Commission has also acknowledged that the career offender guideline can be problematic, particularly when it is based on prior drug trafficking offenses. In its recent 15 year report, the Commission said:

> The question for policymakers is whether the career offender guideline, especially as it applies to repeat drug traffickers, clearly promotes an important purpose of sentencing. Unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the offender, criminologists and law enforcement officials testifying before the Commission have noted that retail-level drug traffickers are readily replaced by new drug sellers so long as the demand for a drug remains high. Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else.
>
> Most importantly, preliminary analysis of the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions shows that their rates are much lower than other offenders who are assigned to criminal history category VI. The overall rate of recidivism for category VI offenders two years after release from prison is 55 percent (USSC, 2004). The rate for offenders qualifying for the career criminal guideline based on one or more violent offenses is about 52 percent. But the rate for offenders qualifying only on the basis of prior drug offenses is only 27 percent. The recidivism rate for career offenders more closely resembles the rates for offenders in the lower criminal history categories in which they *would be* placed under the normal criminal history scoring rules in Chapter Four of the *Guidelines Manual.* The career offender guideline thus makes the criminal history category a *less* perfect measure of recidivism risk than it would be without the inclusion of offenders qualifying only because of prior drug offenses.

U.S. Sentencing Commission, <u>Fifteen Years of Guideline Sentencing</u> 133-34 (Nov. 2004).

The decisions cited above and the Commission's study make clear that in some cases the career offender guideline will conflict with § 3553(a). First, in cases involving low-level street dealers, § 4B1.1 will often produce a sentence far longer than any previous sentences – one greater than necessary to deter the defendant from committing further

11

crimes. Relatedly, such sentences do not reduce crime under an incapacitation theory because other street level dealers quickly take the defendant's place.

Second, the career offender guideline will in some cases result in an over-statement of the seriousness of the defendant's record and the risk that he will re-offend. This is so because a defendant who might otherwise be in category II or III based on two minor drug sales will instead automatically fall within category VI under § 4B1.1(b). Thus, although a defendant with a prior record may be more culpable and more deserving of punishment than a first time offender, see U.S.S.G. ch. 4, pt. A, introductory cmt., the career offender guideline may nevertheless sometimes skew the range too high. Further, according to the Commission's studies, persons who are career offenders because of prior drug offenses are statistically much less likely to re-offend than defendants who fall within category VI based on criminal history points.

Third, the broad language of § 4B1.2(a) & (b) will often sweep within the career offender guideline defendants with relatively minor records. For instance, offenses such as fleeing, walk-away escape and car theft can qualify as "crimes of violence" under the guideline, see, e.g., Howze, 343 F.3d at 921-22; United States v. Bryant, 310 F.3d 550, 553 (7th Cir. 2002); United States v. Sun Bear, 307 F.3d 747, 752-53 (8th Cir. 2002), though they are likely not what Congress had in mind when it instructed the Commission to ensure that repeat, violent offenders received sentences near the maximum, see 28 U.S.C. § 994(h).[7]

---

[7]I also note that § 4B1.2 does not, in defining crimes of violence and controlled substance offenses, consider the length of the sentence actually imposed, which may be a better indicator of the severity of the offense. Cf. U.S.S.G. § 4A1.1 (assigning criminal history points based on the length of the prior sentence imposed). Instead, it includes all

12

In the present case, the two priors that made defendant a career offender were a 1992 conviction for selling 2.9 grams of cocaine for $220, for which he received a sentence of 3 years in prison, and a 1994 conviction for delivering 1 gram of cocaine for $100, for which he received a sentence of 3 ½ years in prison. Defendant was 19 and 22 years old, respectively, when he committed these offenses. He incurred no further criminal convictions until the instant offense in 2004.

Applying the career offender guideline to defendant produced several stark results. First, it produced a guideline range twice what it otherwise would have been. Second, it produced a range about five times longer than any previous sentence that defendant received. Third, it placed defendant in category VI even though his priors were more than 10 years old and committed when he was a young man, and even though he led a law-abiding life in the interim. See U.S.S.G. § 4A1.3 cmt. n.3 (noting that a departure may be appropriate when the defendant's prior convictions were close to ten years prior to the instant offense and the defendant did not engage in criminal behavior in the interim). Under these circumstances, the advisory guideline range was greater than necessary to satisfy the purposes of sentencing.

### b. Defendant's Positive Character Traits

The guidelines also did not adequately account for defendant's positive personal characteristics. See United States v. Ranum, 353 F. Supp. 3d 984, 986 (E.D. Wis. 2005). During his colloquy, which I found impressive, defendant stated that he was not the same

_____

qualifying offenses in which a sentence exceeding one year was possible, no matter the actual sentence. Thus, a defendant who served 20 years on a prior drug case is treated the same as one who received a sentence of probation.

Case 2:04-cr-00254-LA   Filed 06/28/06   Page 13 of 16   Document 78

person he was when selling drugs nearly two years ago. He stated that he had cut ties to his former associates, spoken to people in the community about the dangers of drugs, and dedicated himself to his family and church. Defendant's actions matched his words. He had been steadily employed for the past year, his employer spoke highly of him, and he fully complied with all conditions of pre-trial release. Defendant also created an invention that he was trying to patent, which showed that he was thinking about the future. Defendant promised to donate 10% of the proceeds to his church. He re-united with his wife and was attempting to be a good father to his children. Defendant further demonstrated positive character development by caring for his brother after he was shot. Finally, the many laudatory letters the court received showed that defendant would have strong support when he re-entered the community.

## D.    Imposition of Sentence

Based on these factors, I found that a total sentence of 126 months was sufficient to satisfy the purposes of sentencing under § 3553(a)(2). This sentence adequately accounted for the over-statement of defendant's criminal history and the greater than necessary deterrent effect produced by the guideline sentence, without unduly depreciating the seriousness of the offense or ignoring the fact that defendant was technically a career offender. It also took into account his positive character traits. I recommended to the BOP that he be placed at a facility as close to his family as possible and participate in any drug treatment programs available (even if such participation could not result in a sentence reduction).

Finally, because defendant was serving a state sentence on the fleeing case, I had to determine whether to run the instant sentence concurrently or consecutively. Section

14

3584 of Title 18 generally leaves this determination to the district court's discretion in light of the factors set forth in § 3553(a). However, U.S.S.G. § 5G1.3 provides additional guidance. Specifically, § 5G1.3(b) states:

> If subsection (a) does not apply [i.e., if the instant offense was not committed while the defendant was serving another prison sentence], and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> >
> > (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b).

The Wisconsin court sentenced defendant to one year on the fleeing charge, which was considered relevant conduct and resulted in an enhancement in the present case under § 3C1.2.[8] That sentence was set to discharge about two weeks after imposition of the instant sentence. Defendant requested an adjustment, which the government did not oppose. I therefore reduced the instant sentence by 12 months and ordered it to run concurrently with the state term to the extent that that term was undischarged.

---

[8]I also considered the flight an aggravating factor under § 3553(a).

15

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 114 months, followed by six years of supervised release. As conditions, I ordered that he repay the buy money involved in the offense and participate in a drug aftercare program. Other conditions appear in the judgment.

Dated at Milwaukee, Wisconsin, this 28th day of June, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge